**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT PADLO,<br><br>                Plaintiff,<br><br>            v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>            Defendant. | Case No. CV 06-286 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Robert Padlo ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits. Alternatively, he asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on September 18, 2006. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

\\

\\

**PROCEDURAL HISTORY**

Plaintiff was born on January 25, 1955 and was fifty years old at the time of the March 29, 2005 hearing. (Administrative Record ("AR") 74). He completed high school and vocational training. (AR 90). He has past relevant work experience as a tire shop supervisor, retail shop manager, and aerospace structural mechanic. (AR 93).

On November 19, 1998, Plaintiff filed an application for Disability Insurance Benefits ("DIB"). (AR 74). He claimed that he became unable to work on June 13, 1996, due to a lower back injury. (AR 74, 84).

After the Agency denied his claim initially and upon reconsideration, Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Samuel W. Warner on July 19, 2000. (AR 52, 58, 503-62). Plaintiff, who was represented by counsel, testified on his own behalf. (AR 504-39). Armon Toomajian, a medical expert, and George Langston, a vocational expert ("VE"), also testified. (AR 503-62). On October 27, 2000, the ALJ issued a decision awarding DIB for a closed period, from June 13, 1996 to March 17, 1998. (AR 402). The ALJ found that by March 17, 1998, Plaintiff's physical condition had improved such that Plaintiff was no longer disabled. (AR 401-02).

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 404). On December 9, 2003, the Appeals Council affirmed the ALJ's finding that Plaintiff was disabled from June 13, 1996 to March 17, 1998. (AR 414). However, the Appeals Council remanded

Plaintiff's case for further consideration of Plaintiff's mental impairment from March 18, 1998 and continuing. (AR 414-15).

On March 29, 2005, a hearing was held before ALJ Peggy M. Zirlin. (AR 417, 563-97). Plaintiff, again represented by counsel, testified on his own behalf. (AR 566-97). David Rhinehart, a vocational expert, also testified. (AR 587-93). On May 27, 2005, the ALJ issued a decision denying benefits. (AR 36). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 15). On November 16, 2005, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (AR 9). Plaintiff commenced the instant action on January 18, 2006.

**FACTUAL BACKGROUND**

**A. <u>Plaintiff's Relevant Medical History</u>**

On June 13, 1996, Plaintiff sustained a work-related lower back injury. (AR 176). In June 1997, Plaintiff underwent lumbar surgery for this injury. (AR 209, 505-06). Plaintiff sought treatment for the residual effects of his injury and surgery from High Desert Hospital. (AR 371-83). Treatment notes from High Desert Hospital indicate that in February 1999, Plaintiff complained of depression and was prescribed Elavil. (AR 377).

On June 1, 1999, Plaintiff was treated by Dr. Glen Arnold, a psychologist at High Desert Hospital. (AR 374). Dr. Arnold diagnosed major depression and provisionally diagnosed bipolar disorder. (AR 374,

387).  On September 7, 1999, Dr. Arnold completed a residual functional capacity ("RFC") assessment, finding that Plaintiff could understand, remember, and perform simple instructions; that Plaintiff had a "guarded" ability to understand, remember, and perform "complex / detailed" instructions; that Plaintiff's ability to maintain concentration for two-hour periods was poor; and that Plaintiff's ability to handle the responsibilities common to a basic work environment was "guarded."  (AR 373).

On October 13, 1999, Plaintiff saw Dr. Akhanjee, a colleague of Dr. Arnold's, for a refill of his Elavil prescription.  (AR 385).  Dr. Akhanjee confirmed Dr. Arnold's diagnosis of major depression, but ruled out bipolar disorder.  (AR 385).

In November 1999, Dr. Arnold conducted WAIS-R tests suggesting that Plaintiff had cognitive functioning in the average range and a schizoaffective disorder.  (AR 384).  In July 2000, Plaintiff reported to Dr. Arnold that he was depressed because of his father's poor health.  (AR 475).  Plaintiff also reported that he had scheduled an appointment with county mental health services.  (AR 475).  In December 2000, Plaintiff reported that he was receiving medications from county mental health services and that he experienced significant improvement in mood stability.  (AR 473).  In January 2001, Dr. Arnold reported that Plaintiff was "doing better" and his mood was improved.  (AR 473).  In June 2001, Plaintiff reported feeling depressed because of his involvement in a lawsuit against his former employer.  (AR 470).  In February 2002, Plaintiff reported that he was depressed because of the sudden death of his mother.  (AR 469).

4

Treating records from Antelope Valley Mental Health Service confirm that Plaintiff sought treatment on July 25, 2000.  (AR 449).  In August 2000, Dr. B. Saunders diagnosed moderate major depression and alcohol abuse.  (AR 447).  In December 2000, Plaintiff reported that he was taking his prescribed medications and that they were effective.  (AR 443).  In March 2001, Plaintiff reported that he felt fine as long as he took his medications.  (AR 442).  Similar comments continued through November 2001.  (AR 438).  In January 2002, Dr. Truman Wong noted that Plaintiff was in a state of grief over the death of his mother.  (AR 437).  Dr. Wong diagnosed major depression and alcohol abuse, but noted that Plaintiff was on an "even keel."  (AR 437).

In January 2003, Dr. Michael Goldman of Antelope Valley Mental Health became Plaintiff's treating doctor.  (AR 430).  In March 2003, Dr. Goldman reported that Plaintiff's depression had improved and that his medications were making a difference.  (AR 430).  Dr. Goldman diagnosed major depression in remission and an unspecified anxiety disorder.  (AR 430).  On January 12, 2004, Dr. Goldman assessed Plaintiff's residual mental capacity, reporting that Plaintiff's ability to understand, remember, and carry out very short and simple instructions was "Unlimited or Very Good" and his ability to understand, remember, and carry out detailed instructions was "Good."  (AR 466-67).

On October 20, 2004, Dr. Truman Wong completed a Mental Impairment Questionnaire.  (AR 476-81).  Dr. Wong reported that Plaintiff's ability to understand, remember, and carry out very short and simple instructions was "Fair," that his ability to understand and remember

detailed instructions was "Fair," and that his ability to carry out detailed instructions was "Poor or None." (AR 480).

### B. <u>Consultative Evaluations</u>

In June 1998, the Foster Assessment Center & Testing Service examined Plaintiff for five days and issued a Vocational Evaluation Report. (AR 273-85). This report found that Plaintiff's "Strongest Vocational Assets" included "an ability to accept supervision and work independently" and "an ability to follow complex oral instructions." (AR 284).

On June 16, 1999, Dr. Marat Pushin performed a consultative psychiatric examination and evaluation of Plaintiff. (AR 345-47). Dr. Pushin diagnosed an adjustment disorder with depressed mood and alcohol abuse. (AR 346). He reported that Plaintiff had an RFC to understand, remember, and carry out simple and complex instructions and to maintain concentration and attention for at least two-hour increments. (AR 347).

On July 13, 1999, a psychiatric consultant from the Disability Determination Service ("DDS") completed a Mental RFC Assessment on Plaintiff. (AR 348-51). The RFC assessment reported that Plaintiff was not significantly limited in his ability to understand and remember simple instructions and was only "moderately limited" in his ability to understand and remember detailed instructions. (AR 348). The report noted that Plaintiff was capable of unskilled job tasks. (AR 350).

\\

\\

1      **C.      Plaintiff's Testimony**

2

3          During the March 29, 2005 hearing, Plaintiff testified that his

4      psychological problems began in 1999.  (AR 571).  He stated that he

5      would "break into tears constantly, from happy to sad, from calm to

6      crying."  (AR 572).  He also stated that he had problems concentrating

7      and understanding people.  (AR 573).  Plaintiff acknowledged that this

8      condition had improved (AR 573), but testified that he still had

9      difficulties with completing tasks, short-term memory, and irritability.

10     (AR 574-75).

11

12         At the hearing, Plaintiff admitted that he drank alcohol as often

13     as he could.  (AR 581).  He estimated that he drank one six-pack per

14     week.  (AR 581).  He stated that this amount was less than what he was

15     drinking in 1998.  (AR 581-82).  Plaintiff further testified that he

16     lived with his father, who was in his eighties, and that Plaintiff took

17     care of his father.  (AR 576-77).  Plaintiff stated that he washed his

18     father's clothes, set up appointments for him, and took his father to

19     appointments.  (AR 577).

20

21     **D.      Vocational Expert's Testimony**

22

23         During the March 29, 2005 hearing, David Rhinehart testified as a

24     vocational expert ("VE").  (AR 587-93).  In response to a hypothetical

25     question assuming Plaintiff's age, education, vocational background, and

26     \\

27     \\

28     \\

7

maximum work capacity as determined by ALJ Warner,[1] the VE testified that such a hypothetical person would not be able to perform Plaintiff's past work. (AR 588). However, the VE testified that skills from Plaintiff's past work as manager of a retail card shop were transferable to the sedentary and semi-skilled job of check cashier (DOT # 211.462-026). (AR 588). The VE testified that such a hypothetical person could also do light unskilled jobs that would accommodate the restrictions, including those of information clerk (DOT # 237.367-018), assembler of small products II (DOT # 739.687-030), and cashier II (DOT # 211.462-010). (AR 589).

The ALJ then asked the VE to assume the further limitations identified by Dr. Pushin's RFC assessment, including Plaintiff's ability to understand, remember, and carry out simple and complex instructions and to maintain concentration and attention for at least two-hour increments. (See AR 34, 589). The VE testified that such a hypothetical person could not perform Plaintiff's past work but could perform the transferable semi-skilled job and the three unskilled jobs. (See AR 34, 589).

The ALJ then asked the VE to assume, instead of the further limitations identified by Dr. Pushin, a set of further limitations based on the DDS psychiatric consultant's RFC assessment. (See AR 34, 590). Specifically, the VE was asked to consider an ability to understand and

---

[1]  ALJ Warner found Plaintiff's maximum work capacity to be light work, with standing and walking at least two hours in forty-five to sixty minute intervals, a sit/stand option, and occasional exposure to working at unprotected heights. (AR 401).

remember simple job instructions, maintain concentration, persistence, and pace for simple repetitive work, relate and interact with others, adapt to changes, and do unskilled jobs tasks. (See AR 34, 590). The VE testified that such a hypothetical person could not perform Plaintiff's past work or the semi-skilled job, but could perform the three unskilled jobs. (See AR 34, 590).

Similarly, the ALJ asked the VE to substitute the further limitations identified by Dr. Arnold in September 1999. (See AR 34, 590). Dr. Arnold's RFC assessment found that Plaintiff could understand, remember, and perform simple instructions; that Plaintiff had a "guarded" ability to understand, remember, and perform "complex / detailed" instructions; that Plaintiff's ability to maintain concentration for two-hour periods was poor; and that Plaintiff's ability to handle the responsibilities common to a basic work environment was "guarded." (AR 373). The VE testified that he could not give an opinion because Dr. Arnold did not define what he meant by "guarded" or "poor." (See AR 34, 590-91).

The ALJ then asked the VE to substitute the limitations identified by Dr. Goldman's January 2004 RFC assessment. (See AR 34, 591). Dr. Goldman found that Plaintiff's ability to understand, remember, and carry out very short and simple instructions was "Unlimited or Very Good" and his ability to understand, remember, and carry out detailed instructions was "Good." (AR 466-67). The VE testified that such a hypothetical person could not perform Plaintiff's past work, could probably perform the semi-skilled job, and could definitely do the three unskilled jobs. (See AR 34, 591).

1    Finally, the ALJ asked the VE to substitute the limitations
2  identified by Dr. Wong in his October 2004 assessment of Plaintiff's
3  maximum work capacity.  (See AR 34, 591-92).  Dr. Wong reported that
4  Plaintiff's ability to understand, remember, and carry out very short
5  and simple instructions was "Fair," that his ability to understand and
6  remember detailed instructions was "Fair," and that his ability to carry
7  out detailed instructions was "Poor or None."  (AR 480).  The VE
8  testified that such a hypothetical person could not perform any work.
9  (See AR 34, 591-92).

10

11              **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

12

13    To qualify for disability benefits, a claimant must demonstrate a
14  medically determinable physical or mental impairment that prevents him
15  from engaging in substantial gainful activity[2] and that is expected to
16  result in death or to last for a continuous period of at least twelve
17  months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42
18  U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant
19  incapable of performing the work he previously performed and incapable
20  of performing any other substantial gainful employment that exists in
21  the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
22  1999) (citing 42 U.S.C. § 423(d)(2)(A)).

23

24    To decide if a claimant is entitled to benefits, an ALJ conducts a
25  five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

26  _____

27    [2]  Substantial gainful activity means work that involves doing
28  significant and productive physical or mental duties and is done for pay
    or profit.  20 C.F.R. §§ 404.1510, 416.910.

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work

11

1  that exists in "significant numbers" in the national economy, taking

2  into account the claimant's residual functional capacity,[3] age,

3  education, and work experience.  Tackett, 180 F.3d at 1098, 1100;

4  Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

5  The Commissioner may do so by the testimony of a vocational expert or by

6  reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.

7  Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

8  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing

9  Tackett).  When a claimant has both exertional (strength-related) and

10  nonexertional limitations, the Grids are inapplicable and the ALJ must

11  take the testimony of a vocational expert.  Moore v. Apfel, 216 F.3d

12  864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340

13  (9th Cir. 1988)).

14

15                          **THE ALJ'S DECISION**

16

17      In her May 27, 2005 decision, ALJ Zirlin found that Plaintiff

18  suffered from depression, alcohol abuse, and the residual effects of

19  lumbar surgery.  (AR 35).  The ALJ concluded that these impairments were

20  severe, but did not meet or medically equal a listed impairment.  (AR

21  35).  The ALJ then adopted ALJ Warner's findings regarding Plaintiff's

22  physical RFC.  (AR 30).  Specifically, the ALJ found that Plaintiff had

23  the residual functional capacity for light exertion with standing and

24  walking at least two hours in forty-five to sixty-minute intervals, with

25

26  ───────────────

27      [3] Residual functional capacity is "what [one] can still do despite
    [his] limitations" and represents an "assessment based upon all of the
28  relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

a sit/stand option and occasional exposure to working at unprotected heights.  (AR 35).

Regarding Plaintiff's mental ability, ALJ Zirlin found that Plaintiff could "understand and remember simple job instructions, maintain concentration, persistence and pace for at least two-hour increments for simple repetitive work, has the ability to relate and interact appropriately with others, and adapt to changes in a routine work setting, and capable of unskilled job tasks." (AR 35).  The ALJ expressly based her findings upon the RFC assessments of Dr. Pushin and the DDS medical consultant.  (AR 29).  The ALJ did not give weight to the RFC assessments of Dr. Goldman and Dr. Wong that suggested Plaintiff was severely mentally impaired.  (AR 29).  The ALJ explained that those assessments were inconsistent with the doctors' treatment notes and Plaintiff's actual daily functioning.  (AR 29).  The ALJ further noted that those assessments were based principally upon subjective complaints and self-assessed functional limitations provided by Plaintiff, whom the ALJ did not find credible.  (AR 29).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, but that he had the residual functional capacity to perform a significant range of light work.  (AR 36).  Based upon the VE's testimony, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy, including the jobs of information clerk, small products assembler II, and cashier II.  (AR 36).  Accordingly, the ALJ determined that Plaintiff was not disabled from March 18, 1998 to December 31, 2003, the date he was last insured for DIB.  (AR 21).

1

2

## STANDARD OF REVIEW

3        Under 42 U.S.C. § 405(g), a district court may review the
4 Commissioner's decision to deny benefits.  The court may set aside the
5 Commissioner's decision when the ALJ's findings are based on legal error
6 or are not supported by substantial evidence in the record as a whole.
7 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing
8 Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th
9 Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

10

11        "Substantial evidence is more than a scintilla, but less than a
12 preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater,
13 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a
14 reasonable person might accept as adequate to support a conclusion."
15 Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To
16 determine whether substantial evidence supports a finding, the court
17 must "'consider the record as a whole, weighing both evidence that
18 supports and evidence that detracts from the [Commissioner's]
19 conclusion.'"  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2
20 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support
21 either affirming or reversing that conclusion, the court may not
22 substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d
23 at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

24

25 \\

26 \\

27 \\

28 \\

14

1                              **DISCUSSION**

2

3       Plaintiff raises only <u>one</u> challenge to the ALJ's decision -- i.e.,

4   that ALJ Zirlin erred because Plaintiff's RFC is incompatible with the

5   jobs identified by the ALJ.   Specifically, Plaintiff contends that he

6   cannot perform the jobs of information clerk, small products assembler

7   II, or cashier II because he is "limited to understanding and

8   remembering simple instructions."   (Jt. Stip. at 5).   Substantial

9   evidence in the record, however, supports the ALJ's determination that

10  Plaintiff is capable of performing these jobs.   Accordingly, remand is

11  not warranted.

12

13      In her decision, the ALJ found that Plaintiff could "understand and

14  remember simple job instructions."   (AR 35).   In response to a

15  hypothetical question from the ALJ, the vocational expert testified that

16  a person with this limitation could perform the jobs of information

17  clerk, small products assembler II, or cashier II.   (AR 590).   In her

18  decision, the ALJ relied on this testimony to find that Plaintiff was

19  not disabled.   (AR 34-35).

20

21      According to the DOT, the position of small products assembler II

22  has a reasoning level of two out of a six-point scale.   (DOT 739.687-

23  030).   Reasoning level two requires the ability to:

24

25      Apply commonsense understanding to carry out <u>detailed but</u>

26      <u>uninvolved written or oral instructions</u>.   Deal with problems

27      involving a few concrete variables in or from standardized

28      situations.

                                  15

(DOT 739.687-030) (emphasis added).  The position of cashier II has a reasoning level of three.  (DOT 211.462-010).  Reasoning level three requires the ability to:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

(DOT 211.462-010).  Finally, the position of information clerk has a reasoning level of four.  (DOT 237.367-018).  Reasoning level four requires the ability to:

> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.

(DOT 237.367-018).  Thus, according to the DOT, the jobs identified by ALJ Zirlin require at least the ability to carry out "detailed but uninvolved" instructions.

The DOT is part of the record for review in social security cases. The regulations provide that DOT classifications provide a rebuttable presumption regarding certain jobs and require that the ALJ take notice of DOT's classifications.  20 C.F.R. § 404.1566(d)(2)-(5)(e).  In this case, the ALJ found that Plaintiff could "understand and remember simple

job instructions," not detailed instructions.   (AR 35).   The ALJ then determined that Plaintiff could perform three jobs that, according to the DOT, require some ability to carry out detailed instructions.   In this sense, the ALJ's determination that Plaintiff could perform these jobs departed from the DOT guidelines.

Neither the ALJ nor the VE provided an explanation for this inconsistency with the DOT.   In cases where the ALJ only considers positions contradicting the DOT, remand may be warranted.   <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that an ALJ "may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation"); <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793-94 (9th Cir. 1997) (remanding where discrepancies between findings on residual functional capacity and DOT were not explained by the ALJ or the VE); <u>Social Security Ruling 00-4p</u>, 2000 WL 1898704 (finding that "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.   When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled").

However, the failure of the ALJ here to explain her deviation from the DOT is harmless error because substantial evidence in the record supports and explains her determination that Plaintiff can perform the identified jobs.   See <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are

harmless.")(citing <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990)).   First, Dr. Pushin's RFC assessment, which the ALJ found credible (AR 29), reported that Plaintiff could "understand, remember, and carry out <u>complex</u> instructions."[4]   (AR 347)(emphasis added).   Dr. Pushin's findings were based on a comprehensive psychiatric examination of Plaintiff.   (AR 345-47).   The law is clear that the opinion of a non-treating examining physician, when based on objective clinical findings, constitutes substantial evidence.   <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (quoting <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985); <u>see also</u>, <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence[.]").   Additionally, the June 1998 Vocational Evaluation Report found that Plaintiff's "Strongest Vocational Assets" included "an ability to follow <u>complex</u> oral instructions."   (AR 284)(emphasis added).   Especially when considered together, Dr. Pushin's RFC assessment and the Vocational Evaluation Report constitute substantial evidence that Plaintiff can understand, remember, and carry out complex instructions.[5]   Accordingly, they support the ALJ's

---

[4]   The record uses "complex" instructions and "detailed" instructions interchangeably. For example, Dr. Arnold's Short-Form Evaluation for Mental Disorders requires an assessment of the patient's "ability to understand, remember, and perform detailed / complex instructions."   (AR 373).

[5]   Plaintiff's testimony regarding his daily activities (i.e., caring for his father, making appointments, and taking his father to appointments (AR 576-77)) also supports the conclusion that Plaintiff can carry out complex instructions.

1  determination that Plaintiff can perform the jobs as described by the
2  DOT.

3

4       Furthermore, insomuch as the ALJ's reliance upon Dr. Pushin's
5  findings represents a rejection of the opinions from Plaintiff's
6  treating physicians, the ALJ has provided specific and legitimate
7  reasons for doing so.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th
8  Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998))
9  (stating that ALJ may reject treating physician's opinion that is
10 contradicted by another examining physician's opinion where ALJ provides
11 "'specific, legitimate reasons' supported by substantial evidence in the
12 record"); Magallanes, 881 F.2d at 751.

13

14      Dr. Arnold, one of Plaintiff's treating doctors, reported that
15 Plaintiff's ability to understand, remember, and carry out "complex /
16 detailed" instructions was "guarded." (AR 373).  The ALJ did not fully
17 credit this opinion, however, because Dr. Arnold's report did not
18 consider Plaintiff's actual daily functioning, did not test Plaintiff's
19 concentration, and did not define what the term "guarded" meant.  (AR
20 29, 34).  See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th
21 Cir. 2004) (stating that an ALJ may discredit treating physicians'
22 opinions that are conclusory, brief, and unsupported by the record as a
23 whole, or by objective medical findings).  Dr. Wong, another treating
24 doctor, reported that Plaintiff's ability to understand and remember
25 detailed instructions was "Fair" and his ability to carry out detailed
26 instructions was "Poor or None." (AR 480).  However, the ALJ rejected
27 Dr. Wong's opinion because it was inconsistent with his treatment notes,
28 his examination results, and Plaintiff's actual daily functioning.  (AR

29).  <u>See</u> <u>Batson</u>, 359 F.3d at 1195.  Thus, the ALJ properly rejected the only medical opinions contradicting Dr. Pushin's finding that Plaintiff was capable of understanding, remembering, and carrying out complex instructions.[6]  The ALJ therefore properly relied on substantial evidence in the record when she determined that Plaintiff was capable of performing the identified jobs as described in the DOT.  Accordingly, remand is not warranted.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: April 19, 2007.


                                        /s/
                                _____
                                SUZANNE H. SEGAL
                                UNITED STATES MAGISTRATE JUDGE

_____

[6]  The other treating physician who addressed Plaintiff's mental RFC, Dr. Goldman, reported that Plaintiff's ability to understand, remember, and carry out detailed instructions was "Good."  (AR 467).  The ALJ rejected Dr. Goldman's RFC assessment, however, for the same reasons she rejected Dr. Wong's.  (AR 29).